LOCKHEED AIRCRAFT CORPORA-
TION, LOCKHEED–GEORGIA COM-
PANY DIVISION

v.

The UNITED STATES.

No. 250–67.

United States Court of Claims.

Oct. 17, 1973.

Gilbert A. Cuneo, Washington, D. C., attorney of record, for plaintiff. David V. Anthony, Whilden S. Parker, Sellers, Conner & Cuneo, Washington, D. C., Harry S. Baxter, Albert C. Tate, Jr., Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., of counsel.

Leslie H. Wiesenfelder, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, DUR-FEE, Senior Judge, and DAVIS, SKEL-TON, NICHOLS, KUNZIG and BEN-NETT, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 168(c)(1) AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

This is a continuation of the case considered in Lockheed Aircraft Corp. v. United States, 432 F.2d 801, 193 Ct.Cl. 86 (1970), where we reviewed a decision of the Armed Services Board of Contract Appeals (ASBCA or Board).[1] We determined defendant, the United States, was entitled to reduce the price of a $10,500,000 negotiated fixed-price contract between the Air Force and plaintiff, Lockheed, pursuant to the Defective Pricing clause[2] of that contract and the Truth in Negotiations Act, 10 U.S.C. § 2306(f) (1970). The prime contract price reduction equalled dollar for dollar the amount of certain overstated material cost items totaling $191,877.00[3] included in a subcontract between Lockheed and Midwestern Instruments, Inc. (Midwestern). Cost estimates of items of the Midwestern subcontract were included in Lockheed's prime contract proposals.

We further decided in Lockheed, supra, that plaintiff was entitled to set off against the material cost overstatement, to the extent of that overstatement, royalties and development costs that Midwestern "had overlooked and excluded" from its cost estimates. Lockheed, supra, 432 F.2d at 807, 193 Ct.Cl.

at 98. As authority for allowing the offset of understatement of costs in contract price information furnished the Government against the overstatement of costs were relied upon Cutler-Hammer, Inc. v. United States, 416 F.2d 1306, 189 Ct.Cl. 76 (1969). We suspended proceedings in order to allow the ASBCA to determine the net price reduction to be allowed the Government after understatement was substracted from overstatement.

The ASBCA found the amount of understated royalty costs (plus markups) to be $87,936.00. When subtracted from the overstatement of $191,877.00, a net price reduction of $103,941.00 in the Government's favor would have resulted.[4] However, the Board, adopting an argument advanced by defendant, ruled that the royalty costs were not eligible for setoff since the failure to disclose cost information which resulted in the understatement of royalty costs by Midwestern had been *intentional*. The ASBCA reasoned that under the Defective Pricing Clause and Truth in Negotiations Act only an *inadvertent* understatement of costs is allowable as a setoff.[5]

On cross motions for summary judgment this case comes to us for Wunderlich Act review[6] of the Board's decision disallowing the Midwestern understated royalty costs as setoffs and finding the United States entitled to a net price reduction of $191,877.00 which was the full amount of the material cost overstate-

---

1. Lockheed Aircraft Corp., Lockheed-Georgia Co. Div., 67–1 BCA ¶ 6356.

2. PART XVIII—PRICE REDUCTION FOR DEFECTIVE COST OF PRICING DATA (NOV. 1962)

   (a) If the Contracting Officer determines that any price, including profit or fee, negotiated in connection with this contract was increased by any significant sums because the Contractor, or any subcontractor in connection with a subcontract covered by (c) below, furnished incomplete or inaccurate cost or pricing data or data not current as certified in the Contractor's Certificate of Current Cost or Pricing Data, then such price shall be reduced accordingly and the contract shall be

modified in writing to reflect such adjustment.

  *  *  *  *  *

3. Originally, $234,623 was deducted from amounts due plaintiff to make up for the reduction in contract price as a result of overstatements. Plaintiff was later refunded $42,-746. The difference, $191,877.00, reflects the amount of overstated cost items.

4. Plaintiff dropped its claim of a setoff of development costs; only the issue of royalty costs as setoffs was before the Board.

5. Lockheed Aircraft Corp., Lockheed-Georgia Div., 72–1 BCA ¶ 9370.

6. 41 U.S.C. §§ 321, 322 (1970).

ment. We believe the royalty costs were erroneously excluded as setoffs.

Plaintiff has argued that under our decision in *Cutler-Hammer, supra,* an understatement of costs may qualify as a setoff whether it is inadvertent or intentional. The Board and defendant contend that *Cutler-Hammer* did not deal with the issue of intentional understatements. The ASBCA and defendant urge that *Lockheed* suggests, and the Truth in Negotiations Act compels, the conclusion that only unintentional understatements may be setoff against overstatements.

■ Even assuming arguendo that it makes a difference whether an understatement of cost estimates furnished the Government in a negotiated fixed-price contract situation is intentional or unintentional, we observe that the Board committed several errors in finding an intentional understatement of Midwestern royalty costs.

■ Following the suspension of proceedings pursuant to our decision in *Lockheed* in order to give the ASBCA an opportunity to determine the amount of the net reduction of the subject contract's price, both plaintiff and defendant chose to rest on the record made in the first proceeding before the Board. In viewing the evidence in this record and in making its findings, the Board arbitrarily and capriciously cast upon plaintiff the burden of proving that the understatement of royalty costs was unintentional. The Government has the burden of proving its entitlement to a price reduction under the Defective Pricing Clause. Sylvania Electric Products, Inc. v. United States, 479 F.2d 1342, 202 Ct.Cl. —— (1973). If the Government seeks to enlarge the net price reduction allowed by urging that certain non-disclosed data was intentionally withheld and therefore should not be considered in setoff, it bears the burden of proof on the issue of intentional nondisclosure.

The Board compounded its error by relying upon plaintiff's failure to carry the burden of proof on the issue of intentional nondisclosure as chief proof that the royalty costs were intentionally undisclosed and thus understated. In its Finding 11–D the Board stated:

D. We conclude that Midwestern's omission of the royalty data was an intentional management choice. We are not able to find why it made such a choice during the original negotiations or in 1963 when it gave a voluntary price reduction. We may not find that the choice was based on the possible existence of a Government license or a fear of competition, or similar specific facts, again because there is no such contention or evidence in the record. But we may not ignore the fact that Midwestern could have had what it regarded as good reasons for not disclosing the data. *Perhaps of most importance there is no evidence in the record to show that the omission was, in fact, unintentional* and appellant argues strenuously that offsets are allowable notwithstanding the fact that they are intentional. [Emphasis added.]

Moreover, viewing the record as a whole, we conclude that there is not substantial evidence to support the Board's conclusion that the understatement of royalty costs was intentional.

The Board readily admitted that the record before it on the "Offsets" issue was "quite limited" and "meager." The record indicates that during the time of the negotiations between Midwestern and Lockheed for the subcontract, Minneapolis-Honeywell Regulator Company had obtained judgment against Midwestern for infringement of a patent which related to the component to be supplied Lockheed under the subcontract. However, up to the time the subcontract was definitized on June 6, 1962, uncontradicted testimony showed that Midwestern believed it could avoid infringement of the patent by alterations to the component to be supplied Lockheed. Seeking to enforce its judgment Honeywell filed contempt proceedings, arguing that the alterations to the component con-

templated by Midwestern would not avoid infringement. In December 1962 Honeywell and Midwestern reached an agreement whereby Midwestern paid patent royalties to Honeywell which withdrew contempt proceedings. The ASBCA found: "During the year 1962 the matter of royalties was 'considerably up into the air.' At some unidentified point during the year, Midwestern came to believe it had to pay royalties."

Midwestern did not disclose its potential royalty liability during subcontract negotiations. The liability was also not disclosed in March 1963 when Midwestern voluntarily reduced its subcontract price; this price reduction had been agreed to by the subcontractor and the Air Force after an audit in September 1962.

Based upon this factual background, the ASBCA wove speculation with conjecture in arriving at the conclusion that information concerning the contingency of Midwestern's royalty liability had been purposely withheld. The ASBCA in Part A of Finding 11 stated:

> * * * At the time of negotiations for the subcontract in early 1962, if Midwestern had disclosed complete royalty information it would have disclosed that it was attempting to avoid infringement and might not have to pay any royalties despite Honeywell's successful suit. We are *unable to find* why Midwestern did not ask for a "savings" clause to cover its potential liability. There *could have been* one or more reasons, as indicated in finding No. 10 above, but the *record contains no evidence* concerning them. Our conclusory finding is that Midwestern did not include royalty data in its price proposal because *for reasons not fully clarified in the record,* it did not want to ask Lockheed (and the Government) to absorb those potential costs. In short, the omission was intentional. [Emphasis added.]

Finding 10, referred to above, itself contains no factual support for the Board's conclusion.

The factual support for the Board's conclusion that the information concerning royalty costs was intentionally withheld became even more tenuous as the Board speculated on "what *would have happened* at the subcontract negotiations if all omitted data on both material costs and royalty costs had been disclosed."

The only "hard" evidence the Board could muster is that Midwestern *knew* of its possible liability to Honeywell for royalties at the time of the subcontract negotiations and further that Midwestern *knew* of its actual liability for royalties after December 1962 when thereafter in March 1963 it voluntarily reduced its subcontract price.

The evidence in the record simply is not substantial enough to support the Board's conclusion of intentional understatement. The substantial evidence standard of reasonableness has not been met. Turnbull, Inc. v. United States, 389 F.2d 1007, 1014, 180 Ct.Cl. 1010, 1024 (1967).

In its motion for summary judgment plaintiff asks us to go beyond just ruling that it is entitled to a setoff in the amount of royalty costs. Plaintiff asks us to consider its argument that the Government has not met its burden of proof that Midwestern's failure to disclose material cost data caused an overstatement of Lockheed's prime contract price. This issue was fully briefed in *Lockheed, supra,* and decided there. We said at 432 F.2d 801, 807, 193 Ct.Cl. 86, 98:

> In accordance with our opinion, the Government is allowed to reduce Lockheed's contract price by the amount of the overstatement resulting from its subcontractor Midwestern's defective material cost data.

Plaintiff's motion for summary judgment that the Government is not entitled to reduce the price of plaintiff's contract in any amount and that plaintiff is entitled to recover all sums withheld by or previously paid over to the Government pursuant to the decision of the contracting officer dated October 19, 1964, is therefore denied. We reverse the deci-

sion of the Board on the setoff issue. Defendant is entitled to a net price reduction of $103,941.00. However, it appears that defendant has already collected $234,623.00 as a price reduction and that plaintiff has since been refunded $42,746.00, although the amounts may still be in dispute. Accordingly, the case is remanded to the Armed Services Board of Contract Appeals to determine the precise amount of plaintiff's recovery, with appropriate proceedings under Pub.L. 92–415, this opinion and General Order No. 3 of 1972. Counsel for plaintiff is designated as the responsible reporting attorney under paragraph 9(a) of General Order No. 3.